May it please the Court, my name is Rich Weston. I'm here on behalf of the appellant Nedeltcho Vladimirov. Thank you for giving me the opportunity to come here and have a discussion about the case. We're asking that you overturn his convictions for money laundering and money laundering conspiracy. One of the bedrock principles of any proper jurisprudence system is that a defendant has the right to confront the accusers against them. Our Supreme Court tells us that there is something deep in our human nature that regards face-to-face confrontation as essential to a fair criminal trial. But that's what it's about. I don't see why having a mask on stops that face-to-face confrontation. I agree with you that that is sort of the bedrock principle under the confrontation clause, you know, look me in the eye and say that that happened to you. Well, Your Honor, the one good quote from Romero v. State, which is the Texas case, says that the most expressive part of the body and something that is traditionally regarded as one of the most important factors in assessing credibility. Assessing credibility is different. I'm sorry. I thought you were starting at least with the bedrock principle behind the confrontation clause, which is not credibility. I mean, in court, it's what you said. It's the confrontation between the witness and the defendant. If you're going to testify against the defendant, then you do it in person and you look him in the eye. And I think that goes... We have that here, right? I disagree, Your Honor. There are four reliability factors. You started your argument with this bedrock principle. You need a confrontation between the defendant and the witness. We had that. There may be other things you want to talk about, about credibility and reliability. But as to if you're going to testify against this guy, you do it in front of him. That happened, right? We superficially had physical presence. I believe you're correct about that, Your Honor. What was superficial about it? Well, I believe in the Romero case talks about that. The whole thing is this face to face is that their face is uncovered, that you're able to interpret everything about them, that it's not there, though, when their face is covered. I mean, even though they're physically present, the four factors that are reliable, the four factors, I think, that are the core concerns of the confrontation clause, physical presence. Excuse me, though, Mr. Wesson, before you get into your merits argument, what, how was the constitutional objection preserved in this case? I realize you weren't trial counsel, Mr. Lafon was, but he simply said to the court, the credibility of the witnesses are going to be very important for this case. My concern is that the witnesses and lawyers are being masked during questioning. So I've moved the court to allow the witnesses to be able to proceed without masks. Now, how is that a constitutional argument? I mean, and I'm wondering, specifically, how does the how does the court, the district court know that a constitutional argument is being made? Because if one's being made, then the court had to make findings, did it not, as to an important public policy and reliability. So if you'd address the preservation argument first, please. Yes, Your Honor. And that wasn't raised in the briefing, but I will address that to the best of my ability. I believe you pointed out he used the word credibility. And I believe he also used the word demeanor in his statement to them. It was used by either him or Mr. Goes. And that is one of the four pillars. And I know you want me to get to this, but I think I have to say that the four pillars are physical presence, oath, the observation of demeanor and cross examination. And in this case, I think by using the words credibility, by using the words demeanor, that is obviously implicating the confrontation clause of the Sixth Amendment. The whole discussion of this issue before the district court was both sides saying, oh, we would prefer to do this. And we would prefer to do that. And we prefer not to be masked ourselves. And we prefer not to have the witnesses. But there was no, it seems to me, argument to the court that you must do this to comply with the Constitution or anything else. Yeah, I'm not aware of any specific law that requires a must that you have to do this. There are many, many cases that say, and right in this context, like if someone objects on hearsay grounds to testimony saying it's not reliable, district court overrules that, that's not enough to preserve an actual confrontation clause claim. Like you really have to say, this is not a regular matter of court discretion. This is a constitutional claim because otherwise district courts don't know. I think it's obvious from the context here. I think it's obvious from the context that everybody thought it was within her discretion. That's the problem with your argument. And to back up just a minute, Your Honor, you know, I don't even know where this rule came from. It's not clear from the record. I don't know if it was thrown upon them that day, which wouldn't give him much opportunity to address that. You don't know what rule came from? What are you talking about? About the witnesses being required to wear masks, because that was not part of it. Back up a little bit. There was a standing order at the time, a standing order that the presiding chief judge had entered, Judge Johnston, and it did not require the witnesses to wear masks at this time, because this case is not during the... No, a week later, though, he reissued the standing order, right? I don't recall, but I have no reason to... And then you take it from me that that's what happened. I have no reason to dispute that. I mean, that's in the record. Yes, but what I'm getting at, Your Honor, is that the standing order that was in effect at the time of this case said nothing about witnesses having to wear masks. So apparently it was communicated at some point to counsel that the witnesses were going to be required to wear masks. But I don't see anywhere in the record where that ruling was made to the judge. What I see is just this colloquy right before trial where the lawyers brought up the issue and said that the credibility and the demeanor of these, especially these four witnesses who might be on drugs and who were crucial to this case, were going to be required to wear masks. So I believe it was apparent from the context and it was thrust upon counsel. And it wasn't something that was a standing rule that he knew he would have to encounter before trial. Well, you acknowledge you had to make the argument and you had to make, you had to let the district court know that this was a constitutional argument, right? Again, that wasn't briefed, Your Honor. I'm not too on it. I think it's a bit of context. It's appealing. So you're the one that should be briefing it. Well, I believe that it was apparent from the context, Your Honor, that this... What was apparent from the context?  Credibility and demeanor are often evidence questions, right? Well, I think in the context of the Confrontation Clause, demeanor is one of the four pillars and that is implicated. Now, the government doesn't appear to dispute that wearing these masks was an infringement of the text of the Sixth Amendment. I mean, I fully believe that it affected the ability to assess the demeanor, not only for the jury. I believe it also affected the cross-examination. Some of my best cross-examinations done when a witness says one thing, but their face tells me another thing. And by a mask covering a large part of the face, I believe that that was affected also. The courts are kind of split on this, right? There are a lot of courts out there saying it really doesn't implicate any of that because, whatever, you can't see their nose. You probably weren't reading that much into how they move their nose. It does hide the mouth, but you've still got the eyes. You've still got body language. You've still got tone of voice. You've got enough demeanor cues that this is really just de minimis and it doesn't make any difference. I would disagree, Your Honor, and some of this goes back to the court never made any findings on why they would have to wear a mask. I think these were the questions that would have been answered by the court had it been properly considered. Isn't that circular, though? Because the court didn't make findings because you didn't raise the or counsel, track counsel, didn't say it was a constitutional argument, which would then obligate the court to make findings regarding an important public policy and reliability. I mean, I agree there is some circularity to it, but I just do not admit that it was that was waived somehow because he didn't say that magic talismanic word confrontation. And I'm suggesting even a separate problem, which is assume you had raised the constitutional argument. The courts appear to be divided on whether that would have obliged the district court to make findings, because if it doesn't implicate the confrontation cause, this court doesn't have to make the findings. And there are a lot of courts out there, both pre-COVID when they're talking about other facial coverings and post-COVID talking about masks saying just doesn't implicate the confrontation clause. It's not a big enough deal to make a difference to any of the underlying purposes of the confrontation clause. Well, you know, I don't know exactly. They've cited a bunch of district court cases. That takes me back to Corey v. Iowa. Corey v. Iowa was the case that was offered by Judge Scalia where they put the it was some type of screen up. And the you know, they could still he was right there. They could still only thing was basically was the kids couldn't see the defendant in that case. What's interesting about that case is there was no effect on it had nothing to do with credibility. Juries making credibility findings. The jury had a perfectly good view. The only thing they cared about was that we lost the face to face confrontation between the defendant and the witness, which, again, we did have here. And we didn't know what I think we didn't have a proper cross-examination on the pillars. I think when there was not, I think it affected the ability to observe demeanor. I think Coy is also talking about these four factors that I'm talking about. And if it's talking about the jury's ability to view demeanor, the jury was looking directly at the child witness. There was no screen. Well, in that case, it would have been the defendants, but at least somebody who is a I don't know what you would call them a core component. It was not available to do that in that case. But that kind of goes to whether Crawford, you know, even the Coy and the and the Craig line of reasoning is even even valid anymore after Crawford. These reliability determinations by the judge, which essentially what that is, is you're saying this is still reliable even though there was a slight. Infringement of demeanors is what Crawford tells us, we don't unless it's a historical, it's a testimonial statement, unless it is a historical exception to the Confrontation Clause, then nothing can apply. That's over our pay grade. I totally take your point that who knows where the Supreme Court will go on cases like Craig. But for now, here we are. And I guess I would just say I think the courts are divided on this. And I will tell you, my concern is I take your point like something covering even a part of a face. You could argue, of course, that at least affects the confrontation. Right. But I do sort of worry about the slippery slope here. You know, I'm just trying to think of hypotheticals, somebody who has a sore throat, like you can't really understand the timber of their voice the way you normally would be able to. Someone who uses Botox, you can't really get as much out of their face as you would like. I mean, there's at some point we call these things de minimis, I think. And I think figuring out where to draw that line is actually quite difficult. Yeah, I agree. I agree with you on that. You're right. I've wrestled in my head with with those questions a lot. There's one Ninth Circuit case. I don't think it's cited anything. It's maybe Jesus Cannata, but a witness in that case, or I believe a wig and a mustache. And in that case, I think they're probably right there that, you know, because a person might naturally have long hair, might have a mustache. In that case, I understand what they're saying there. But these masks that we're wearing, I mean, they cover the majority of your face. Our faces are so expressive. I mean, you're judging my demeanor probably right now by my face. So, you know, this is the confrontation clause, the Sixth Amendment. I don't think even if it is a slight, you know, or a lesser infringement is the confrontation clause. And we have to fully preserve that for a jury trial for them to see that, I believe. And I believe that the lawyers have to see that. I believe that everybody has to be able to see that. And, you know, even it's not a confrontation clause issue, but even my well, my client now, the defendant testified and he had a mask on his face. They didn't get to see that in this case. I just believe that this case, you know, I understand you disagree on whether it was preserved as a constitutional claim. But in Coy, they said, since there have been no individualized findings that these particular witnesses needed special protection, the judgment could not be sustained by any conceivable exception. And I believe that makes your job easy in this case. I thought you were going to be arguing different issues. I'm ready to go wherever the court takes me. You're free. May it please the court. Eric goes on behalf of the United States of America. Vladimirov's guilty verdict should be affirmed. Let's turn first to the face masks issue. It was our position in the brief. And as correctly stated, the use of the face masks do not violate the confrontation clause. We did walk through the Maryland versus Craig four-part balancing test, as has been alluded to. But pre-trial, and this issue was raised the weekend, or excuse me, we picked a jury on Friday. We started the trial on Monday. So it was raised in advance by the court. So the court gave us specific instructions as to how she wanted the courtroom to be operated. It was raised as an issue that was not couched in constitutional terms. Is the transcript that we have of that discussion, is that what you're talking about? Did that take place pre-trial? Yes, Your Honor. Okay. And that's JA 450 to 451, just so I had it handy and I wanted to double check. Now, Judge Berger did do a balancing test with regard to that, which kind of has echoes of the Maryland versus Craig test. You're saying there are Craig findings? You're saying the judge made the findings that would be required under Craig in this case? No, Your Honor, I'm not. I'm suggesting that they were echoed. That is to say, she did a risk analysis based on the public policy against the effect of masks on that. Can I just ask you, I couldn't tell from your brief. Assume, hypothetically, this issue is properly raised or for whatever reason we are plowing ahead and reaching it. What is the government's position on the wearing of masks and whether or not that affects the confrontation clause rights? And if it does, what follows from that? That wearing face masks... Go ahead. I'm sorry, Your Honor. I didn't mean to speak over you. That wearing face masks is not a violation of the confrontation clause as balanced against the trying to prevent the spread of COVID. She didn't make the findings here. If you are conceding that it implicates confrontation clause rights and you are conceding that the judge didn't make Craig findings here, I don't understand why. If you are conceding both of those things, how is this not a violation? Well, I do not wish to concede both of those things, but wearing a face mask would, if it implicates the confrontation clause... Well, does it or does it not? It may implicate. Okay. Well, if it may implicate it and she didn't make, I'm sorry, and the district court did not make Craig findings, how does that not add up to a constitute, at least a maybe constitutional violation? Because what the district court did satisfies the Craig test. You just told me it didn't, that there are no Craig findings in this case. So now there are Craig findings in this case. I'm sorry, Your Honor. Look, I'll be, I'll be, perhaps I'm misspeaking. The district court did not specifically make Craig findings. We will concede that there were no Craig findings. What the district court did do was weigh the wearing of the masks against the risk to people in the courtroom. And that was couched in terms of the COVID-19 pandemic. And when I was trying to... But Mr. Groves, the district court never addressed the reliability of the testimony that was going to be admitted with the witnesses wearing masks. You agree, right? And it seems to me that reliability was absolutely key when you have people who were testifying, essentially, that they committed felonies. I mean, they, you know, hundreds of Dyson vacuum cleaners, hundreds of hard drives. I mean, these were massive amounts of stolen goods. So why wouldn't reliability be something that the district court... And it gets back to preservation. I understand you're saying that, you know, that the district court wasn't required to address something that wasn't brought up in front of it. But if we get beyond that, don't you have a really serious problem? Because these witnesses, you know, on their face are, you know, the fact that they may have been addicted to drugs when they testified. The fact that they were testifying that they were stealing merchandise and providing it to Mr. Vladimirov. I mean, isn't that the essence of unreliability in terms of a witness? If you know they're a liar and a thief, I mean, no. In this case, Your Honor, no. And here's why. The witnesses testified under oath in person and were subject to cross-examination. You could observe their demeanor. You could observe their eyes. You could observe their reaction, their tone. The effect of the covering of the mouth as weighed against the important policy of preventing the spread of the pandemic would allow the jury to still have a complete satisfaction of assessing the reliability, even if there is some effect on the mouth. Yes, wearing a mask would have some effect on the ability to interpret demeanor. I guess, so these cases are unfolding around the country. Does the United States have a position on whether the wearing of masks implicates the confrontation clause so as to require the balancing that you're relying on? Or is this just happening on kind of an ad hoc basis? I would say it's been happening on an ad hoc basis. We've not received formal guidance, but we went through the constitutional hoops because we were convinced that the Maryland v. Craig test is satisfied in this case, even without an express finding. That's what actually happened. They were under oath. They were subject to cross-examination. You could interpret. I'm sorry. Isn't the point of Maryland v. Craig that the finding has to be made at the time by the district court? You think that Maryland v. Craig can be satisfied even if the court doesn't make findings, if we can then sort of post hoc our way through the thing? I would say that Maryland v. Craig does not necessarily require an on-the-record test if the court is able to determine from the record that the other factors were satisfied, which this court can do. Again, there's no dispute that they were under oath, that they were subject to cross-examination.  So whether that issue has to be raised and preserved, I would say there's certainly adequate information in the record to show that all of those factors were, well, I would say conceded. They're not under dispute, and that's as they were analyzed. So with the opportunity to evaluate a witness's demeanor, face, eyes, some people say the eyes are the language of the soul. I don't know. I'm not poetic, but you could make eye contact. You could talk to these witnesses. You could hear these witnesses. You could react to these witnesses. And as far as I wanted to address your question, yes, the fact that they were drug addicts did, in fact, come out in front of the jury. It was explored not only on direct, but cross-examination. So the jury heard all of that evidence. They heard their responses to those questions, and they heard their role as to what their role in this scheme was. Now, I want to make sure I've thoroughly explored that issue, but other issues were raised in the appeal. But I agree the confrontation clause is certainly an important issue. There was not a speedy trial act violation. Again, that also dovetails into the difficulties of trying cases during the COVID-19 pandemic. And when we look at the Barker versus Wingo factors as analyzed in that case, there was no speedy trial violation. There was no prejudice that was asserted by the defendant at any point in this case. And there was no impairment to the defense, no loss of evidence, no unavailability of a witness. The judge made a specific ends of justice finding for the exclusion of all of that. So that issue wasn't even timely raised by defendant or defense counsel under Rule 12. It was just belatedly adopted where it was denied by judges. Isn't that how it works? I thought that was our rule that once the defendant gets counsel, if counsel asks that those pro se motions be ruled on, then that is preservation. Is that not right? Not necessarily. In this case, Your Honor, the judge determined that he wasn't a pro se defendant. He was filing pro se motions while represented by counsel. Once counsel says, please act on those motions, isn't that enough to preserve it? Well, we think not. That's not extraordinarily well-preserved. And often this court will instruct us. How extraordinarily well-preserved does it have to be? Well, this court has issued many, many opinions talking about preserving objections with specificity. When this defendant filed, he filed reams of pro se motions that were belatedly adopted by defense counsel out of an abundance of caution. The court said that she had read those and examined those and denied those. So that was, in fact, done on the record. But even if that issue is preserved and it's not extraordinarily well-preserved, it was funneled through counsel and it wasn't specifically observed as this. But even if it is preserved, we can just dispense with it because there was no speedy trial act violation here. The reason for the delay wasn't some nefarious purpose of the United States. We wanted to go to trial. We couldn't because of the COVID-19 pandemic or it was otherwise shut down. So even if we reach that question on preservation, which is your exact point, Judge Harris, the Barker versus Wingo factors are all ticked off. There is no allegation of prejudice. I'd like to turn briefly to the fact that there was no abuse of discretion by the use of the experts in this case. The experts were noticed nearly a year ahead of time. The questions were conducted. The judge did a very careful gatekeeping and analysis, gave a pretrial ruling that this was specialized knowledge and the United States would be required to show that the experts was relevant and reliable. They did offer special... Did they split between being experts and fact witnesses? No, they did not, Your Honor. What the experts did was they testified as to how they did. They were initially qualified, as we were required to do. They testified about each and every one of the investigative steps. And as they testified about the investigative steps, then at the end of their testimony, I asked them to draw conclusions to a reasonable degree of expert certainty. That, along with the jury instruction that the judge specifically advocated, along with the fact that there were no objections to the manner in which we were calling these witnesses or any additional requests, is exactly how this expert testimony did not confuse the jury. And as the United States Supreme Court says in the Yates opinion, jurors are presumed to follow the instruction. The instruction the judge gave was spot on. She asked about the frequency. Defense counsel said once at the end of both is sufficient. And both experts testified in a similar way. These were the investigative steps that they did. They provided that information to law enforcement. These were not law enforcement witnesses. These are the investigative steps they did. Now, what is your conclusion to a reasonable degree of expert certainty? That's consistent with Moeller. It's consistent with Wilson. And finally, and lastly, if I could, I'd like to turn to the sufficiency of the evidence. This was also raised on the appeal. This has to do with whether we were able to prove and whether any rational triar effect could find guilt on a conspiracy to commit a promotional money laundering scheme. The conspiracy to commit a promotional money laundering scheme had to do with how these boosters who were stealing the items were converting the money to cash. They went to the same bank where Vladimir occasionally withdrew money from the bank when he didn't have enough money to pay them for the stolen merchandise. And he continued to do that repeatedly. He continued to pay them from the same account where he was selling the stolen, he would get these stolen items, sell it on eBay, sell it throughout the country at low wholesale price. And then eventually transferred $153,000 to Bulgaria, which accounts for counts two through four. In total, Vladimirov had a fair trial. We went through the steps to make sure he had a fair trial. There was sufficient evidence to support his verdict and the experts were otherwise properly qualified. Are there any additional questions from this court? Seeing none, we would ask that Vladimirov's guilty verdict be affirmed. And thank you. Thank you very much. Yes, your honors. First, address the issue about the, they said it was a speedy trial act issue and we're talking about this. And I specifically did not raise the Speedy Trial Act. Sixth Amendment claim. Well, yes, exactly, your honor. And I didn't do that because, you know, he's put in a pretty tough position. His counsel didn't file the motion. He's forced to file it himself. And he, if you read his motion, he couches it. He specifically mentions the Sixth Amendment Speedy Trial Act in his motion that was adopted by counsel and it was ruled upon by the court. So there's not a Speedy Trial Act issue. That's not what we raised in the appeal. We raised a constitutional issue. And the counsel over there has said that there was no prejudice. Well, there's three factors when you're doing the prejudice is to prevent oppressive free child incarceration, to minimize anxiety and conservatively accused, and to limit the possibility of the defense being impaired. So there's three issues. And he only talked about one of those. Well, we have said many, many times, I think, that that's kind of the key, the specific prejudice to the ability to put on a defense. I think you're right, your honor. It has been listed as maybe a more, you know, getting some more weight in this case. But you got to think this guy's been in jail for 17 months. You know, COVID is no doubt it's serious. You know, he's been subjected to possibly getting COVID. That was actually their objection to one of the motions by the government was that. So that's enough. It does strike me, you know, a lot of people had to wait a while for a trial during the worst of COVID. There's going to be a bit of a floodgates effect here, right? If it's enough that you waited for something close to 12 months during the height of COVID, and that is in itself the prejudice. I mean, I don't want to ask you to give me a ballpark figure, but that's a lot of people, right? You know, if some people getting out of jail has to yield to the Sixth Amendment, I'm fine with that. And I think the law should be. That being said, I tried a case in state court right in the middle of COVID and everything went fine. And the thing we need to remember, too, about this case is these trials weren't necessarily barred by COVID during a lot of this 17 month delay. They would make a motion to continue due to COVID due to witnesses. And it was always couched in this witness or that witness. No specific witness was ever identified that couldn't be there. So I think that's important to remember, too. It wasn't barred. It was their motions for that. Addressing the expert issue. How long is your client's sentence? Tell me that again. 90, 96 months, I believe. It's right in that 90-something month. And the time that he served before trial. Towards that, right? Certainly, Your Honor. And we're still in COVID alert, right? I mean, COVID is certainly still an issue. I don't know, you know, alert. I don't necessarily agree with that. I mean, it's serious. Obviously, nobody wants to get it. But it's still around. No doubt about that. Regarding the expert issue, the one thing I really want to talk about was calling him a fence or them being allowed to say that, you know, this was a fencing operation. That was raised pretrial. And, you know, Mr. Goh said when they had this colloquy before the jury was in there, he said, I'm familiar with 704B, which is that you cannot go to the defendant's mental state as an expert. They can't go to criminal intent. All they can say is this is consistent with the fencing scheme. And then they've alluded in their briefing that somehow we invited this error later. But they were specifically asked not whether this was consistent. It was asked on direct. Nihas, the expert from CVS, I believe. Are your conclusions concerning whether this was a fencing operation based to a reasonable degree of certainty or fear? Absolutely. That's not is this consistent. That goes straight to his mental intent because they cannot dispute, because they've said it on the record, that a fence is someone that knows they are receiving stolen goods. And in this case, by calling him a fence, by saying this was a fencing operation, it's directly to the knowledge portion of that. So it was they also asked him on direct all these factors together. This is Barella, the other expert. I'm easily able to determine that Mr. Vitamira was, in fact, running a fencing operation that was buying stolen merchandise from multiple addicts. That, again, goes directly to the mental state of the defendant, which 704B specifically bars. You know, seven rules say that, yes, just because it's the ultimate issue doesn't mean you can't do that. But in this case, they specifically opined not that this was consistent with things. They went beyond that pre-trial ruling and said this was a fencing operation. And that was on direct, not just raised on cross-examination. Also, basically, what these experts said was common sense. I mean, everybody knows how stolen merchandise works. And, you know, there's certainly reasons why you would buy something for a low price. But at the same time, everybody knows basically what these guys said was he should have known because it's common sense. If you buy for a certain price that is stolen or if you sell for a certain price, it's stolen. Basically, everything these experts said was simply common sense and didn't help the jury at all. And as you allude to earlier, Judge Motz, they're questioning, it went back and forth between expert testimony and factual testimony. Now, there was a curative instruction given. I'm not, excuse me, I'm past my time. Can I finish? Finish up this last point. But a curative instruction being given, I think basically that just spotlights it. The case law shows there are other factors that should be done, such as allowing him to testify at one part as a fact witness, at another part as an expert, or require counsel's question. Mr. Wesson, did counsel ask for those alternate remedies? I don't believe he specifically asked for those remedies, Your Honor. He, you know, it was brought up as, I think basically it was brought up. He raised the issue in the colloquy beforehand as, you know, are these people assisting the jury in figuring something out or are they just helping the prosecution present its case? Thank you very much for your time. Thank you. And Mr. Wesson, I see that your court appointed and we especially thank you for your assistance today. We thank all counsel for their help. We're sorry we can't come down to greet you, but we wish you the very best. And I think we are ready to adjourn for the day. Adjourn court. This honorable court stands adjourned. Sign and die. God save the United States and this honorable court.
judges: Pamela A. Harris, Diana Gribbon Motz, Barbara Milano Keenan